UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

SAMUEL DEJESUS,

        Petitioner,

v.                                   Case No. 04-74756

DOUG VASBINDER,

        Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR HABEAS CORPUS AND PETITIONER'S "MOTION FOR VOLUNTARY DISMISSAL OR TO HOLD PETITION IN ABEYANCE"**

Petitioner Samuel DeJesus has filed a *pro se* application for the writ of habeas corpus petition under 28 U.S.C. § 2254. The habeas petition challenges Petitioner's state convictions for second-degree murder and possession of a firearm during the commission of, or attempt to commit, a felony (felony firearm). The sole ground for relief is ineffective assistance of trial counsel. Also pending before the court is Petitioner's motion for a voluntary dismissal or to hold the habeas petition in abeyance. Petitioner wishes to exhaust state remedies for a new claim about his sentence.

The court has found no merit in Petitioner's claim about his trial attorney or his proposed new claim regarding his sentence. Consequently, both the habeas petition and Petitioner's motion to dismiss this action without prejudice will be denied.

**I. BACKGROUND**

Petitioner was charged in Wayne County, Michigan with first-degree murder and felony firearm. His first trial ended in a mistrial because the jurors acquitted Petitioner of

first-degree murder, but they were unable to reach a unanimous decision as to whether Petitioner was guilty of the lesser-included offense of second-degree murder and felony firearm.

The State retried Petitioner on charges of second-degree murder and felony firearm. The charges arose from the theft of a Jeep Cherokee and a shooting that occurred the following day when the boyfriend of the owner of the Jeep Cherokee recognized the vehicle in traffic while riding as a passenger in another car. The testimony at trial has been summarized as follows:

> Lenna Moreno testified that on October 5, 2000, she drove her Jeep Cherokee to a bar. She left it in the parking lot and when she returned a few minutes later, the Cherokee was gone. Defendant's brother, Jesus DeJesus ("Jesus"), testified that he drove defendant and a group of friends to the bar parking lot, where defendant stole the Cherokee.
>
> The next day, Aaron Osborne and the victim, Victor Lazada (Moreno's boyfriend), were driving near Toledo and Junction Streets in Detroit when they spotted what they believed to be the victim's girlfriend's Cherokee. Osborne was driving and the victim instructed him to pull-up next to the Cherokee. Osborne testified that he could see three males through the tinted windows of the Cherokee. The victim rolled down his window and said, "That's my vehicle. Pull over." The Cherokee accelerated and Osborne followed. From the open driver's window, defendant pointed a pistol and fired twice at Osborne and the victim. One shot hit Osborne's car tire, the other shot went through the windshield and struck the victim in the head. The Cherokee sped away from the scene. Osborne drove the victim to the hospital, where the victim eventually died from the gunshot wound on October 15, 2000.
>
> Lewis Perez, a friend of defendant and of the victim's brother, testified that on October 6, 2000, the victim's brother called and told him about the shooting. A few minutes later, defendant arrived at Perez's house and defendant said that he, "busted some niggers at Michigan and Junction." Perez testified that he told defendant that he [defendant] had shot Perez's friend's brother. Defendant showed Perez a gun and threatened to kill Perez if he "snitched."
>
> The next day, defendant, Perez and a group of friends took the Cherokee

> to a park. They doused it in gasoline and set the Cherokee on fire. On October 12, 2000, Perez went to the police and showed them the burned Cherokee. The prosecutor agreed not to prosecute Perez for his role in crimes connected with the victim's shooting, in return for Perez's testimony against defendant.
>
> At trial, Jesus testified about a conversation that he had with defendant after defendant found out the victim died. In response to questions from the prosecutor, Jesus stated that defendant had refused to answer him when he asked whether defendant had killed the victim. He further testified that defendant had not been crying during this conversation, but was depressed. He admitted that he had told the police that defendant was crying.

*People v. DeJesus*, No. 241438, at 1-2 (Mich. Ct. App. Jan. 15, 2004) (unpublished) (alteration added).

Petitioner did not testify or present any witnesses, and on February 6, 2002, the jury found him guilty, as charged, of second-degree murder, Mich. Comp. Laws § 750.317, and felony firearm, Mich. Comp. Laws § 750.227b. The trial court sentenced Petitioner to two years in prison for the felony firearm conviction and to a subsequent term of thirty to forty-five years for the murder. The Michigan Court of Appeals affirmed Petitioner's conviction, *see DeJesus*, Mich. Ct. App. No. 241438, and on July 29, 2004, the Michigan Supreme Court denied leave to appeal. *See People v. DeJesus*, 683 N.W.2d 672 (2004) (table).

Petitioner filed his habeas corpus petition on December 6, 2004. As noted, his sole ground for relief is ineffective assistance of trial counsel. Respondent urges the court in a responsive pleading to deny the habeas petition on the ground that the state court applied the appropriate constitutional standard and applied that standard to the facts in a reasonable manner.

On November 16, 2006, Petitioner filed the pending motion to voluntarily dismiss

this action without prejudice or to hold the case in abeyance. Petitioner seeks to exhaust state remedies for a new claim that the trial court erroneously calculated the state sentencing guidelines.

## II.  STANDARD

Petitioner is entitled to the writ of habeas corpus if he can show that the state court's adjudication of his claim on the merits–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (Justice O'Connor's majority opinion on Part II). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

"[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id.* at 410 (emphasis in original). "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409.

4

"Furthermore, state findings of fact are presumed to be correct unless the defendant can rebut the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1)." *Baze v. Parker*, 371 F.3d 310, 318 (6th Cir. 2004), *cert. denied*, 544 U.S. 931 (2005).

### III.  DISCUSSION

### A.  Petitioner's Habeas Claim

### 1.  Factual Background

Petitioner alleges that his trial attorney was ineffective for failing to object to inadmissible evidence that Petitioner did not respond when his brother accused him of shooting the decedent. The disputed evidence was elicited by the prosecutor during her direct examination of Petitioner's brother, Jesus DeJesus. Jesus testified that, after he learned about the shooting from Lewis Perez, he asked Petitioner whether he had shot somebody. According to Jesus, Petitioner did not answer his question or say anything. Jesus also admitted telling the police that Petitioner was depressed and crying at the time. At trial, however, Jesus stated that he lied to the police and that Petitioner was not depressed and crying when he questioned Petitioner. (Tr. Feb. 5, 2002, at 98-103.) The prosecutor made the following remarks in her closing argument:

> Now, what's also interesting from the defendant's older brother, who may or may not have been totally forthright in his testimony. Maybe [he] didn't answer all the questions that were being asked. But what he did tell us is that Lewis [Perez] told him about the shooting. And when Jesus asked the defendant about the shooting the defendant wouldn't say nothing. Wouldn't say nothing. Confronted with the fact that you're being blamed for a murder, the defendant doesn't say anything. But what does he do? He's depressed and he's crying.
> 
> Now, ladies and gentlemen, common sense tells you that if you didn't commit the crime, if you weren't the shooter, why wouldn't you say to your own brother when asked did you do the shooting up at Michigan and

5

> Junction? Why wouldn't you say, "I didn't shoot anybody. I didn't commit any murder." Why would you just not say anything and begin crying? That's consciousness of guilt. Common sense.

(Tr. Feb. 6, 2002, at 18-19).

Petitioner has not alleged that the prosecutor violated his constitutional right to remain silent.[1] He contends that the prosecutor violated state law, which prohibits the use of tacit admissions, or evidence of a defendant's failure to respond to an accusation, as substantive evidence of the defendant's guilt. *See People v. Hackett*, 596 N.W.2d 107, 112-13 (1999); *People v. Bigge*, 285 N.W. 5, 6 (1939). Petitioner's habeas claim is that his attorney should have objected to evidence prohibited by *Bigge*.[2]

---

[1] The United States Court of Appeals for the Sixth Circuit has held that a defendant's prearrest silence may not be used as substantive evidence of guilt. *See Combs v. Coyle*, 205 F.3d 269, 283 (6th Cir. 2000). However, the Supreme Court has not decided whether a defendant's prearrest silence may be used for purposes other than impeachment of the defendant. *See Portuondo v. Agard*, 529 U.S. 61, 69-70 (2000); *Jenkins v. Anderson*, 447 U.S. 231, 236 n.2 and 240 (1980).

[2] In *Bigge*, the prosecutor explained during his opening statement that someone had said in the defendant's presence that the defendant was "guilty as hell" of embezzlement. The prosecutor went on to say that it was the defendant's duty under the circumstances to have responded that the comment was not true. The Michigan Supreme Court held:

> [t]here can be no such thing as confession of guilt by silence in or out of court. The unanswered allegation by another of the guilt of a defendant is no confession of guilt on the part of a defendant. Defendant, if he heard the statement, was not morally or legally called upon to make denial or suffer his failure to do so to stand as evidence of his guilt. He said nothing, and what was said in his presence by another was inadmissible . . . .

*Bigge*, 288 Mich. at 420; 285 N.W. at 6. The Michigan Supreme Court explained in *Hackett* that *Bigge* was limited to tacit admissions such as a defendant's failure to deny an accusation. The supreme court stated that *Bigge* precludes the admission of a defendant's silence in the face of an accusation as substantive evidence of guilt. *Hackett*, 596 N.W.2d at 112-13.

6

### 2. Legal Framework

The Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668 (1984), "qualifies as 'clearly established Federal law'" for purposes of evaluating ineffective-assistance-of-counsel claims. *Williams*, 529 U.S. at 391. Pursuant to *Strickland*, Petitioner must demonstrate that his attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. Petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. He also must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "[A] defendant claiming ineffective counsel must show that counsel's actions were not supported by a reasonable strategy and that the error was prejudicial." *Massaro v. United States*, 538 U.S. 500, 505 (2003).

### 3. The State Court Decision

The Michigan Court of Appeals cited *Strickland* in its decision and concluded that defense counsel was not ineffective. The court of appeals stated that Petitioner's brother Jesus DeJesus merely questioned Petitioner about whether he killed the victim and that Jesus's question did not amount to an accusation or statement of guilt as in *Bigge*. The court of appeals concluded that there was no error and no need for defense counsel to advocate a meritless position. The court of appeals also stated that the failure to object might have been a matter of sound trial strategy because, if an objection had been sustained, the jury would have been left with the impression that Petitioner made an incriminating statement to his brother.

Lastly, the court of appeals stated that, even if defense counsel should have objected, there was no reasonable probability that the result of the proceedings would have been different absent counsel's error. In the state court's words, "[e]ven without the testimony of Jesus or the comments of the prosecutor, the testimony of [Lewis] Perez and [Aaron] Osborne, as well as police officers, provided evidence from which a jury could have found defendant guilty." *DeJesus*, Mich. Ct. App. No. 241438, at 4.

Judge Richard A. Bandstra wrote in a concurring opinion that Jesus's question to Petitioner was at least an implicit accusation of guilt and, therefore, Jesus's testimony concerning Petitioner's silence was inadmissible under *Bigge*. Judge Bandstra nevertheless agreed with the majority's conclusion that defense counsel may have chosen not to object as a matter of trial strategy and that the result of the proceeding would not have been different if counsel had objected.

### 4. Analysis

This court agrees with the conclusion of Judge Bandstra's concurring opinion that Jesus's question to Petitioner was accusatory in nature. However, even assuming that the prosecutor violated *Bigge* by asking Jesus DeJesus about Petitioner's reaction to his question,[3] the Constitution does not require defense attorneys to recognize and raise every conceivable claim. *Engle v. Isaac*, 456 U.S. 107, 134 (1982).

> Moreover, experienced trial counsel learn that objections to each potentially objectionable event could actually act to their party's detriment. Learned counsel therefore use objections in a tactical manner. In light of this, any single failure to object usually cannot be said to have been error

---

[3]A prosecutor's comment on a defendant's silence can rise to the level of prosecutorial misconduct requiring reversal. *Lundgren v. Mitchell,* 440 F.3d 754, 780 (6th Cir. 2006) (citing *Griffin v. California,* 380 U.S. 609, 615 (1965)).

8

> unless the evidence sought is so prejudicial to a client that failure to object essentially defaults the case to the state. Otherwise, defense counsel must so consistently fail to use objections, despite numerous and clear reasons for doing so, that counsel's failure cannot reasonably have been said to have been part of a trial strategy or tactical choice.

*Lundgren v. Mitchell*, 440 F.3d 754, 774 (6th Cir. 2006).

### a. Deficient Performance

Petitioner's attorney may have decided as a matter of trial strategy not to object to the prosecutor's questions and remarks about Petitioner's silence. As the state court recognized, defense counsel may have wanted to avoid the impression that Petitioner said something incriminating in response to his brother's question. Petitioner's silence in the face of his brother's question likely was less damaging to his case than having the jury speculate what Petitioner might have said to his brother.

The prosecutor elicited similar testimony from Jesus DeJesus at Petitioner's first trial. (Tr. Sept. 25, 2001, at 219-20.) Although defense counsel did not object then, the jurors acquitted Petitioner of the most serious charge against him, and they were unable to reach a decision on second-degree murder. Defense counsel might have concluded that Petitioner had a good chance of being acquitted if defense counsel took the same approach at the second trial.

The possibility that defense counsel failed to object as a matter of trial strategy is further buttressed by defense counsel's closing arguments and defense theory. Counsel stated that Petitioner might have been depressed or crying when questioned about the shooting because he was responding to what someone else had done. (Tr. Feb. 6, 2002, at 33.) The defense theory was that Aaron Osborne and Lewis Perez were not credible witnesses and that there was reasonable doubt as to whether

Petitioner was the shooter.

### b. Prejudice

Even assuming that defense counsel's performance was deficient, this court agrees with the Michigan Court of Appeals that Petitioner was not prejudiced by his attorney's failure to object to the prosecutor's questions and remarks. "A court applying *Strickland's* prejudice prong 'must consider the totality of the evidence before the judge or jury.' *Strickland*, 466 U.S. at 695, 104 S. Ct. 2052. Accordingly, the prejudice determination is necessarily affected by the quantity and quality of other evidence against the defendant." *Hodge v. Hurley*, 426 F.3d 368, 376 n.17 (6th Cir. 2005).

There were no fingerprints, bullet fragments, or casings that linked Petitioner to the shooting, and the only eyewitness to testify was Aaron Osborne, who saw only part of the shooter's face (from the bottom of his nose upward). Osborne described the shooter to the police as a black male, or possibly a Hispanic male, in his twenties. This general description fit Petitioner, but Osborne was unable to say whether Petitioner was the shooter. (Tr. Feb. 5, 2002, at 50-85.) Jesus DeJesus testified that Petitioner was one of three men who stole the Jeep Cherokee and that Petitioner and his friends usually kept a revolver in the car which they used. (*Id.* at 86-113.)

The most damaging testimony came from Lewis Perez, who was Petitioner's cousin. Lewis testified that he was present when Petitioner stole the Jeep Cherokee. He claimed that it was Petitioner's idea to steal the Cherokee and that Petitioner was the person who popped the lock and drove it away. (*Id.* at 178-94.)

Lewis further testified that, about ten minutes after speaking by telephone with his friend Pedro, Petitioner came to Lewis's home and said that he had shot at some

people near the intersection of Michigan and Junction.  Petitioner later pulled out his gun and showed it to Lewis.  When Lewis informed Petitioner that Petitioner had shot his (Lewis's) friend's brother, Petitioner said that he would shoot Lewis also if he snitched.  The next day Petitioner said that he wanted to burn the truck due to the shooting and fingerprints.  Lewis watched as Petitioner set the Jeep Cherokee on fire. (*Id.* at 201-29.)

Lewis admitted on cross-examination that he had not told the police about being present during the theft and burning of the Jeep Cherokee.  Lewis also admitted that he never confided to his parents that Petitioner had a gun in their home or that Petitioner had threatened to shoot him.  He claimed, however, that he decided to speak with the police after seeing the victim in the hospital and that he would have testified without an immunity agreement.  (*Id.* at 239-42, 251-90.)  On re-direct examination, Lewis testified that he was telling the truth and that he told the truth when he informed the police that Petitioner had admitted shooting at some people at Michigan and Junction.  (*Id.* at 290-92.)

The evidence against Petitioner, as summarized above, was substantial without Jesus DeJesus's testimony that Petitioner remained silent when asked about the shooting.  There is no reasonable probability that the result of the proceeding would have been different had defense counsel objected to the prosecutor's questions and remarks and the trial court had sustained the objection.

## B. Petitioner's "Motion for Voluntary Dismissal or to Hold Petition in Abeyance"

Although Petitioner contends that the trial court sentenced him on the basis of inaccurate information, *cf. Townsend v. Burke*, 334 U.S. 741 (1948), the record

11

indicates that the disputed issue was merely a matter of state law.  Defense counsel appears to have agreed with the final calculations, which did not change the guidelines score.  (Tr. Feb. 20, 2002, at 3-5, 9-12.)  Questions of state sentencing law and whether state sentencing guidelines were incorrectly scored fail to assert a claim for which habeas corpus relief may be granted.  *Miller v. Vasquez,* 868 F.2d 1116, 1118-19 (9th Cir. 1989); *Branan v. Booth,* 861 F.2d 1507, 1508 (11th Cir. 1988); *Long v. Stovall*, 450 F. Supp. 2d 746, 754 (E.D. Mich. 2006) (Gadola, J.).; *Whitfield v. Martin*, 157 F. Supp. 2d 758, 762 (E.D. Mich. 2001) (Tarnow, J.).  Because Petitioner's sentencing claim is not cognizable here, there is no point in allowing Petitioner to return to state court to further exhaust state remedies.

### IV.  CONCLUSION

IT IS ORDERED that Petitioner's application for the writ of habeas corpus [Dkt # 1] is DENIED.

IT IS FURTHER ORDERED that Petitioner's "Motion for Voluntary Dismissal or to Hold Petition in Abeyance" [Dkt # 28] is DENIED.

      S/Robert H. Cleland  
      ROBERT H. CLELAND  
      UNITED STATES DISTRICT JUDGE

Dated:  January 31, 2007

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, January 31, 2007, by electronic and/or ordinary mail.

      S/Lisa Wagner  
      Case Manager and Deputy Clerk  
      (313) 234-5522